UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA        CRIMINAL ACTION

VERSUS        NO. 24-203

PHILLIP JENKINS        SECTION: D(2)

ORDER AND REASONS

Before the Court is a Motion to Dismiss Indictment filed by Defendant Phillip Jenkins ("Jenkins").[1]   The Government opposes the Motion.[2]   After careful consideration of the parties' memoranda, the record, and the applicable law, the Motion is **DENIED**.

## I. FACTUAL BACKGROUND

On August 29, 2024, Jenkins was charged with One Count of Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).[3]   The Indictment alleges that:

> On or about July 16, 2024, in the Eastern District of Louisiana, the defendant, Phillip Jenkins, knowing that he had been convicted of crimes punishable by imprisonment for a term exceeding one year, to wit: convictions on September 10, 2018, in the Parish of Orleans, under case number 493476A, for domestic abuse aggravated battery with dangerous weapon, in violation of La. R.S. 14:37.7 and domestic abuse battery, in violation of La. R.S. 14:35.3, did knowingly possess ammunition, and a firearm, to wit: a SCCY Model CPX-2, 9-millimeter caliber pistol, bearing serial number C051047, said firearm and ammunition having been in and affecting interstate commerce . . . .[4]

On April 16, 2025, Jenkins filed the instant Motion to Dismiss Indictment,

---

[1] R. Doc. 28.
[2] R. Doc. 31.
[3] R. Doc. 1.
[4] *Id.* at 1-2 (emphasis omitted).

arguing that § 922(g)(1), the statute under which Jenkins was charged in the instant Indictment, is unconstitutional facially and as applied to Jenkins.[5]    Jenkins acknowledges that the Fifth Circuit has rejected the argument that § 922(g)(1) is facially unconstitutional but nevertheless raises this argument to preserve it for further review on appeal.[6]    In support of his as-applied challenge, Jenkins argues that the Second Amendment presumptively protects Jenkins's right to possess a firearm and that the Government cannot meet its burden to show that the Nation has a longstanding tradition of permanently disarming someone with a criminal history analogous to Jenkins's.[7]    Jenkins further argues that § 922(g)(1) is unconstitutionally vague because the statute has been read to prohibit the possession of firearms by individuals with certain felony convictions, thereby failing to give proper notice as to who is actually prohibited from possessing firearms under the statute.[8]  Jenkins further argues that the statute's vagueness results in a delegation of the legislative function to the judiciary in violation of the separation of powers doctrine.[9]    Finally, Jenkins argues that § 922(g)(1) is unconstitutional because it exceeds Congress's power to regulate commerce, although he acknowledges that this argument is foreclosed by Fifth Circuit precedent and raises the argument only to preserve it for further review on appeal.[10]

In response, the Government argues that Jenkins's facial challenge is

---

[5] R. Doc. 28.
[6] R. Doc. 28-1 at 11.
[7] *Id.* at 8-9.
[8] *Id.* at 11-12.
[9] *Id.* at 15.
[10] *Id.* at 17 n.4.

foreclosed by Fifth Circuit precedent, as is his argument that the statute violates the Commerce Clause.[11] The Government further argues that the Fifth Circuit's decision in *United States v. Diaz* dooms Jenkins's as-applied challenge.[12] According to the Government, *Diaz* stands for the idea "that any felony predicate with a common-sense nexus to violence and/or public safety concerns will permit dispossession under § 922(g)(1)."[13] The Government insists that Jenkins's predicate offenses—domestic abuse aggravated battery with a dangerous weapon and domestic abuse battery—are "violent felony offenses," and therefore, Jenkins is permissibly disarmed under § 922(g)(1).[14] Finally, the Government rejects Jenkins's argument that § 922(g)(1) is unconstitutionally vague, arguing that "a person of ordinary intelligence would have sufficient notice that Jenkin's [sic] alleged conduct falls within the scope of the statute."[15]

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 12 provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue."[16] Rule 12(b)(3) further provides:

> The following defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonable available and the motion can be determined without a trial on the merits:
> . . .
> (B) a defect in the indictment, or information; including:
> . . .

---

[11] R. Doc. 31 at 6, 12.
[12] *Id.* at 7-8 (citing 116 F.4th 458 (5th Cir. 2024)).
[13] *Id.* at 7 (citing 116 F.4th at 471).
[14] *Id.* at 8.
[15] *Id.* at 11-12.
[16] FED. R. CRIM. P. 12(a)(3).

(v) failure to state an offense; . . . .[17]

## III.   ANALYSIS

The Second Amendment reads: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."[18]   In *District of Columbia v. Heller* and *McDonald v. Chicago*, the Supreme Court "held that the Second and Fourteenth Amendments protect an individual right to keep and bear arms for self-defense."[19]   Following these holdings, lower courts analyzed Second Amendment claims by utilizing a two-step framework that combined "history with means end scrutiny."[20]

In 2022, however, the Supreme Court expressly rejected this approach in *New York Rifle and Pistol Association, Inc. v. Bruen* and clarified that the appropriate analysis requires a different two-step inquiry.[21]   Under the framework articulated in *Bruen*, courts must first determine whether the Second Amendment's plain text covers an individual's conduct.[22]   If it does, "the Constitution presumptively protects the conduct," and the burden switches to the Government to "demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's

---

[17] FED. R. CRIM. P. 12(b)(3)(B)(v).
[18] U.S. CONST. amend. II.
[19] *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022) (citing *Heller*, 554 U.S. 570 (2008) and *McDonald*, 561 U.S. 742 (2010)).
[20] *Id.*
[21] *Id.*
[22] *Id.*

'unqualified command.'"[23]  "[A]nalogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster."[24]

In the wake of *Bruen*, federal courts have faced a wave of challenges to the constitutionality of firearm regulations.  Recently, the Supreme Court considered a challenge to 18 U.S.C. § 922(g)(8), which prohibits the possession of a firearm by an individual subject to a domestic restraining order, in *United States v. Rahimi*.[25]  In upholding the statute, the Supreme Court analogized § 922(g)(8) to surety laws and "going armed" laws in place at the time of the Founding.[26]  Surety laws required individuals to post bonds when there was a "probable ground to suspect[] future misbehavior" and sought to "prevent all forms of violence" and the "misuse of firearms."[27]  In the same vein, going armed laws "provided a mechanism for punishing those who had menaced others with firearms" by prohibiting "riding or going armed, with dangerous or unusual weapons, to terrify the good people of the land."[28]  These laws, the Supreme Court concluded, "confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed."[29]

---

[23] *Id.* (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)).
[24] *Id.* at 30.
[25] 602 U.S. 680 (2024).
[26] *Id.* at 699-700.
[27] *Id.* at 695.
[28] *Id.* at 697 (quoting 4 BLACKSTONE 149) (internal quotations and brackets omitted).
[29] *Id.* at 699.

Thereafter, the Fifth Circuit considered the constitutionality of § 922(g)(1) in *United States v. Diaz,* and subsequently in numerous other cases.[30]  As a threshold issue, the *Diaz* Court "concluded that the Second Amendment extends to convicted felons because they are part of 'the people' it protects."[31]  Then, in considering whether the Nation has a longstanding tradition of disarming someone convicted of theft—the relevant predicate offense for Mr. Diaz—the Court identified several Founding era laws that punished theft with capital punishment or the forfeiture of the perpetrator's estate.[32]  These laws, the Court explained, were comparable to the purpose of § 922(g)(1) in that they sought to "deter violence and lawlessness" and were at least as punitive.[33]  For these reasons, the Fifth Circuit deemed § 922(g)(1) constitutional on its face and as applied to Diaz; however, it did not hold that every predicate offense on which the application of § 922(g)(1) may be based is consistent with the Nation's historical traditions.[34]

With this landscape in mind, the Court addresses to each of Jenkins's arguments in turn.

### A. Foreclosed Challenges

As an initial matter, the Court considers Jenkins's argument that § 922(g)(1) is facially unconstitutional, as well as his argument that the statute exceeds Congress's power under the Commerce Clause.  As Jenkins acknowledges, these

---

[30] 116 F.4th 458.

[31] *United States v. Contreras*, 125 F.4th 725, 729 (5th Cir. 2025) (quoting *Diaz*, 116 F.4th at 466).

[32] *Diaz*, 116 F.4th at 469.

[33] *Id.*

[34] *Id.* at 472.

arguments are foreclosed by binding Fifth Circuit precedent.[35]  The Court therefore

denies Jenkins's Motion to the extent it is premised on these bases.

### B. Whether § 922(g)(1) Is Unconstitutional As Applied to Jenkins

Next, Jenkins argues that § 922(g)(1) is unconstitutional specifically as applied

to him.  Jenkins argues that the Second Amendment presumptively protects his right

to possess a firearm and insists that the Government cannot meet "its heavy burden

to show that disarming Mr. Jenkins fits within the Nation's historical tradition of

serious and permanent punishment for persons who would have been considered

felons at the Founding based on his specific prior convictions."[36]

The first prong of the *Bruen* inquiry is easily resolved.  The Fifth Circuit has

held that "[t]he plain text of the Second Amendment covers the conduct prohibited by

§ 922(g)(1)."[37]  The only remaining question, therefore, is whether the Government

has carried its burden to show that disarming Jenkins—whose predicate offenses

include one count of domestic abuse battery with dangerous weapon and one count

domestic battery—fits within the Nation's historical traditions.[38]   Recent Fifth

Circuit case law is instructive to this question.

In *United States v. Isaac*, the Fifth Circuit considered an as-applied challenge

to the constitutionality of § 922(g)(1).[39]  There, the defendant's predicate offense was

aggravated assault with a deadly weapon in violation of Texas Penal Code article

---

[35] *Id.*
[36] R. Doc. 28-1 at 7-8.
[37] *Diaz*, 116 F.4th at 467.
[38] R. Doc. 1.
[39] No. 24-CR-50112, 2024 WL 4835243, at *1 (5th Cir. Nov. 20, 2024).

22:02(a)-(b).[40]   The Fifth Circuit ultimately rejected the defendant's constitutional challenge, stating:

> "From the earliest days of the common law, firearm regulations have included provisions barring people from misusing weapons to harm or menace others." *United States v. Rahimi*, 144 S. Ct. 1889, 1899 (2024). Here, Isaac previously misused a firearm in an attempt to harm another. A ban on his ability to possess a firearm thus fits easily within our Nation's historical tradition of firearm regulation. *See id.* at 1888–902. Moreover, we recently held that someone convicted of "car theft" could be constitutionally dispossessed of his firearm. *See Diaz*, 116 F.4th at 467, 471–72. *A fortiori*, someone convicted of aggravated assault with a deadly weapon can be constitutionally dispossessed of a firearm.[41]

Later, the Fifth Circuit reaffirmed this reasoning in *United States v. Bullock* when it rejected an as-applied challenge to § 922(g)(1) by a criminal defendant with predicate offenses of aggravated assault and manslaughter.[42]   The Court, relying on *Rahimi*, acknowledging this Nation's history of disarming people who pose a threat to the public, stated that "[t]here can be no doubt that manslaughter and aggravated assault in this context constitute dangerous and violent crimes."[43]   The Court further found that the defendant's conduct was "'relevantly similar' to, and arguably more dangerous than, the 'prototypical affray which involved fighting in public,' the precursor to the 'going armed' laws punishable by arms forfeiture."[44]   Further, the Court explained, "the justification behind going armed laws, to 'mitigate demonstrated threats of physical violence,' supports a tradition of disarming individuals like Bullock pursuant to § 922(g)(1), whose underlying convictions

---

[40] *Id.*
[41] *Id.*
[42] 123 F.4th 183, 184 (5th Cir. 2024).
[43] *Id.*
[44] *Id.* at 185 (quoting *Rahimi*, 602 U.S. at 681).

stemmed from the threat and commission of violence with a firearm.'"[45]   In yet

another recent Fifth Circuit decision which analyzed *Bullock* and *Isaac*, the Fifth

Circuit held

> While the predicate aggravated assault convictions in *Bullock* and *Isaac*
> involved the use of firearms, whereas [Defendant's] aggravated battery
> offense did not, the underlying reasoning of these cases remains
> applicable. [Defendant's] felony conviction for a "crime of violence"
> indicates that he poses a threat to public safety and the orderly
> functioning of society.  The regulation of such person's ability to possess
> a firearm "is consistent with this Nation's historical tradition of firearm
> regulation" and punishment of people who have been convicted of violent
> offenses.  *Bruen, 597 U.S. at 33–34; Bullock, 123 F.4th at 185; see also*
> *Williams,* 113 F.4th at 661–62 ("History shows that governments may .
> . . disarm people it believes are dangerous.").[46]

With the foregoing authority in mind, the Court finds that § 922(g)(1), as-

applied to Jenkins, is constitutional.  As the Fifth Circuit has recognized, this Nation

has a history of disarming individuals who are "deemed a threat to public safety and

the orderly functioning of society,"[47] and therefore this Nation's "tradition of firearm

regulation allows the Government to disarm individuals who present a credible

threat to the safety of others."[48]  The Court further addresses Jenkins's predicate

offenses which support that the threat to public safety and the orderly functioning of

society.

Jenkins was charged with violating § 922(g)(1) based on his prior convictions

for domestic abuse battery and domestic abuse aggravated battery with dangerous

---

[45] *Id.*
[46] *United States v. Schnur*, 132 F.4th 863, 869 (5th Cir. 2025).
[47] *Id.*
[48] *Rahimi*, 602 U.S. at 700.

weapon under Louisiana law.[49]  For a defendant to be convicted of domestic abuse

battery, the State must prove that the defendant intentionally used force or violence

against a household member or family member.[50]  To be convicted of domestic abuse

aggravated assault with a dangerous weapon, "the State must prove: (1) that the

defendant intentionally used force or violence against the victim; (2) that the force or

violence was inflicted with a dangerous weapon; and (3) that the dangerous weapon

was used in a manner likely to cause death or great bodily harm."[51]  A dangerous

weapon is "any gas, liquid or other substance or instrumentality, which, in the

manner used, is calculated or likely to produce death or great bodily harm."[52] Thus,

similar to the defendant in the *Schnur* case described above, Jenkins's predicate

crime for domestic abuse battery with a dangerous weapon fits the definition of a

"crime of violence."

Indeed, convictions of this nature are "analogous to, and arguably more

dangerous than, the prototypical affray which involving fighting in public, the

precursor to the going armed laws punishable by arms forfeiture."[53]  The objective of

these laws was to "mitigate demonstrated threats of physical violence" similar to the

---

[49] *See* R. Doc. 1.
[50] LA. R.S. § 14:35.3.
[51] *State in Interest of T.M.*, 105 So.3d 969, 973 (La. App. 5 Cir. 2012) (citation omitted).
[52] LA. R.S. § 14:2(A)(3).  It is not entirely clear whether the dangerous weapon brandished by Jenkins was a firearm or not.  Even if it was not, the Court's analysis does not change.  The Fifth Circuit has found that violent offenses committed without the aid of a firearm remain crimes of violence that may indicate that the defendant poses a threat to public safety such that the regulation of that person's ability to possess a firearm is consistent with the Nation's historical tradition of firearm regulation. *See Schnur*, 132 F.4th at 870 ("While the predicate aggravated assault convictions in *Bullock* and *Isaac* involved the use of firearms, whereas Schnur's aggravated battery offense did not, the underlying reasoning of these cases remains applicable.  Schnur's felony conviction for a 'crime of violence' indicates that he poses a threat to public safety and the orderly functioning of society.") (footnote omitted).
[53] *Id.* at 870 (quoting *Bullock*, 123 F.4th at 185) (internal quotations and brackets omitted).

violence evident by Jenkins's prior convictions.[54]  For this reason, disarming him "'is consistent with this Nation's historical tradition of firearm regulation' and punishment of people who have been convicted of violent offenses."[55]  Thus, the Court holds that prohibiting Jenkins from possessing a firearm pursuant to § 922(g)(1) is not unconstitutional as-applied.

## C. Whether § 922(g)(1) Is Unconstitutionally Vague

Jenkins's final basis for dismissal of the Indictment is that § 922(g)(1) is unconstitutionally vague for two reasons.  First, Jenkins argues that since *Bruen*, § 922(g)(1) has been deemed unconstitutional as applied to certain felons and "[u]nder this piecemeal approach," felons do not have fair notice as to which predicate offenses will trigger § 922(g)(1).[56]  Jenkins further argues that this vagueness threatens the separation of powers doctrine because courts' application of § 922(g)(1) "on a case-by-case basis" "threatens to hand responsibility for defining crimes to judges."[57]  The Court disagrees on both bases.

---

[54] *Id.* (quoting *Bullock*, 123 F.4th at 185) (internal quotations omitted).  Following *Bruen*, courts have consistently found that crimes of this nature are dangerous crimes that warrant the dispossession of firearms.  *See Issac*, 2024 WL 4835243 (aggravated assault with a deadly weapon); *Bullock*, 123 F.4th at 185 (aggravated assault and manslaughter); *Schnur*, 132 F.4th at 870  (aggravated battery); *United States v. Hill*, No. 24-CR-97, 2025 WL 562762 (E.D. La. Feb. 20, 2025) (obstruction of justice, domestic abuse aggravated assault with a dangerous weapon, aggravated assault with a firearm, and criminally negligent discharge of a firearm).

[55] *Id.* (quoting *Bruen*, 597 U.S. at 33-34).  Jenkins argues that the Government must point to historical analogues prohibiting the possession of guns in the defendant's home, as that is where Jenkins possessed the firearm in this case.  The Court does not read the historical analogues cited by the Fifth Circuit, lower federal courts, and the Government to limit firearm prohibition to public settings; however, to the extent they do, the Court finds that the cited laws are sufficiently analogous to meet the *Bruen* standard.  *Bruen*, after all, does not require a historical twin.

[56] R. Doc. 28-1 at 11-12.

[57] *Id.* at 15 (internal quotations and brackets omitted).

"A criminal statute survives our vagueness review if it 'define[s] the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'"[58] A plain reading of the statute supports this finding and provides sufficient notice to ordinary people of the conduct that is prohibited. Indeed, in this case, Jenkins was put on notice that his offense falls within 922(g)(1). Jenkins was previously convicted of domestic abuse battery and domestic abuse aggravated battery with dangerous weapon, both felonies under Louisiana law and punishable by imprisonment for a term exceeding one year. Under these facts and the language of § 922(g)(1), an ordinary person had fair notice that it is unlawful for them to possess a firearm. Further, while Jenkins asserts that courts have deemed § 922(g)(1) unconstitutional as applied,[59] by definition, those determinations only apply to those individuals. As the court noted in *Range v. Attorney General United States of America*, a case cited by Jenkins, "[o]ur decision today is a narrow one.[60] Bryan Range challenged the constitutionality of 18 U.S.C. § 922(g)(1) only as applied to him given his violation of 62 Pa. Stat. Ann. § 481(a)."[61] Finding merit in as-applied challenges does not render the enforcement of a statute arbitrary and discriminatory. Further, the Court notes that numerous district courts, post-*Bruen*, have rejected facial and as-applied challenges to the constitutionality of § 922(g)(1).[62] Even if this

---

[58] *United States v. Edwards*, 182 F.3d 333, 335 (5th Cir. 1999) (quoting *United States v. Gray*, 96 F.3d 769, 776 (5th Cir. 1996).

[59] R. Doc. 28-1 at 11.

[60] 69 F.4th at 106.

[61] *Id.*

[62] *United States v. Johnson*, No. 22-CR-60, 2024 WL 3820380 (E.D. La. Aug. 14, 2024); *United States v. Ingram*, 623 F.Supp.3d 660 (D. S.C. 2022); *United States v. Cockerham*, No. 21-CR-6, 2022 WL

Court were to accept the defendant's argument that a split in authority could render a statute unconstitutionally vague, it is unclear how Jenkins was not given fair notice that his conduct was prohibited when many courts still consider § 922(g)(1) constitutional. Jenkins's challenge to the statute as unconstitutionally vague fails.

Jenkins's challenge to § 922(g)(1) based on the separation of powers doctrine fares no better. The separation of powers doctrine is based on the idea that "[o]nly the people's elected representatives in the legislature are authorized to 'make an act a crime.'"[63] Indeed, "[v]ague statutes threaten to hand responsibility for defining crimes to relatively unaccountable police, prosecutors, and judges, eroding the people's ability to oversee the creation of the laws they are expected to abide."[64] Putting aside that the Court has found that § 922(g)(1) is not vague, Jenkins's argument fails because courts may impose restrictions on statutes without violating separation of powers principles. The Supreme Court has instructed that when a court narrows a "federal statute[] to avoid constitutional shoals," the court does "not legislate, but instead *respects the legislature*, by preserving a statute through a limiting interpretation."[65] "Striking down an act of Congress, on the other hand, is a

---

4229314 (S.D. Miss. Sept. 13, 2022); *United States v. Jackson*, No. 21-CR-51, 2022 WL 4226229 (D. Minn. Sept. 13, 2022); *United States v. Hill*, 629 F.Supp.3d 1027 (S.D. Cal. 2022); *United States v. Coombes*, 629 F.Supp.3d 1149 (N.D. Okla. 2022); *United States v. Collette*, 630 F.Supp.3d 841 (W.D. Tex. 2022); *United States v. Siddoway*, No. 21-CR-205, 2022 WL 4482739 (D. Idaho, Sept. 27, 2022); *United States v. Charles*, 633 F.Supp.3d 874 (W.D. Tex. 2022); *United States v. Price*, 635 F.Supp.3d 455 (S.D. W. Va. 2022)*; see also United States v. Gonzalez*, No. 22-CR-1242, 2022 WL 4376074 (7th Cir. Sept. 22, 2022); *United States v. Moore*, No. 23-CR-40, 2024 WL 2090150 (W.D. Pa. May 9, 2024); *Schnur*, 132 F.4th 863; *United States v. Betancourt*, No. 24-CR-20070, 2025 WL 1571854, (June 4, 2025, 5th Cir. 2025); *U.S. v. Branson*, No. 24-CR-601417, 2025 WL 1571826 (June 4, 2025, 5th Cir. 2025); *Isaac*, 2024 WL 4835243 (5th Cir. 2024); *Bullock*, 123 F.4th 183.

[63] *United States v. Davis*, 588 U.S. 445, 451 (2019) (quoting *United States v. Hudson*, 11 U.S. 32 (1812)).
[64] *Id.* (collecting cases).
[65] *Skilling v. United States*, 561 U.S. 358, 409 n.43 (2010) (citing *United States v. Lanier*, 520 U.S. 259, 267-68 n.6 (1997)).

matter of 'great gravity and delicacy,' and 'it is a cardinal principle' that courts may strike down laws only when 'a construction of the statute by which the question may be avoided' is not 'fairly possible.'"[66]  For these reasons, the Court rejects Jenkins's argument that the *Bruen* analysis violates the separation of powers doctrine.

## IV.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the Motion to Dismiss Indictment filed by Defendant Phillip Jenkins is **DENIED**.

New Orleans, Louisiana, June 9, 2025.

**WENDY B. VITTER**
**United States District Judge**

---

[66] *United States v. Espinoza-Melgar*, 687 F.Supp.3d 1196, 1218 (D. Utah 2023) (quoting *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 348 (1936)).